# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

GLORIA PATTIE,　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　Plaintiff,　　　　　　　)
　　　　　　　　　　　　　　　　　)　CIVIL ACTION NO. 3:10-CV-104
v.　　　　　　　　　　　　　　　　)　JUDGE KIM R. GIBSON.
　　　　　　　　　　　　　　　　　)
AT&T,　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　Defendant.　　　　　　　)

## MEMORANDUM OPINION AND ORDER

**GIBSON, J.**

### I. INRODUCTION

This matter comes before the Court on cross-motions for summary judgment filed by Plaintiff Gloria Pattie (Doc. No. 22) and Defendant AT&T (Doc. No. 25). In her Motion for Partial Summary Judgment, Plaintiff asks the court to find that Defendant meets the requirements for *respondeat superior* liability, thus establishing the fifth element of the five-part test for determining the existence of a hostile work environment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5. Doc. No. 23. For its part, Defendant seeks summary judgment as to all claims in Plaintiff's April 19, 2010 Complaint. Doc. No. 27. For the reasons that follow, Plaintiff's Motion for Partial Summary Judgment is **GRANTED** and Defendant's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**.

### II. JURISDICTION AND VENUE

Jurisdiction is proper pursuant to 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391.

## III. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was employed continuously by Defendant and its predecessors beginning in 1988 and ending in 2008. Plaintiff's Concise Statement of Material Facts (Doc. No. 24) at 1; Defendant's Concise Statement of Undisputed Material Facts (Doc. No. 26) at 1. At the time of Plaintiff's termination, she had attained the position of Store Manager at an AT&T Mobility retail store in Altoona, Pennsylvania. Doc. No. 26 at 1. Plaintiff's store was within a geographical sales area originally overseen by two Area Retail Sales Managers ("ARSMs"). *Id.* at 3. One of those managers, Lisa Leinweber, was Plaintiff's supervisor prior to the events at issue in the present case. *Id.* at 1. AT&T desired to increase the amount of time spent by the ARSMs at local retail sales locations, because Leinweber was only able to visit stores such as Plaintiff's approximately once every other month, and stores in the Altoona area had questionable performance. *Id.* at 3. As a result, AT&T hired Ray A. Hill as a third ARSM. Doc. No. 24 at 1; Doc. No. 26 at 4.

Thereafter, beginning in January 2007 and ending in December 2008, Plaintiff came under the immediate supervision of Hill. Doc. No. 24 at 1; Doc. No. 26 at 1. Plaintiff was one of six managers under Hill's direction, four of whom were male, and two of whom were female. Doc. No. 24 at 1. Hill had the ability to direct, discipline, and recommend hiring and firing of Plaintiff and her peers. *Id.* at 1-2. He visited Plaintiff's store almost weekly. Doc. No. 26 at 4. Hill's purpose was to turn every store in his area into a more effective sales organization. *Id.* at 4. To this end, Plaintiff claimed that Hill believed that ineffective sales representatives should be "written up and out" for poor performance and lack of desired sales behaviors, and that Hill further believed that it might be necessary to bring in "fresh meat," to build a better sales organization. *Id.* at 5.

2

Plaintiff did not personally agree with Hill's behavior or aspects of his strategy. *Id.* at 20. She describes her and her fellow store managers' initial meeting with Hill, explaining that in introducing himself, Hill stated that the managers should consider him to be their "whore." Doc. No. 24 at 2. Hill also purportedly referred to fellow employees as "fresh meat" and used the word "fuck" and several of its derivatives in Plaintiff's presence, as well as that of other employees. *Id.*; Doc. No. 26 at 15. Overall, Plaintiff found Hill's management style "offensive." Doc. No. 26 at 14.

Plaintiff also alleged numerous incidents of inappropriate behavior on the part of Hill. One took place at a managers' meeting in Pittsburgh where, following the conclusion of the meeting, Plaintiff observed Hill dancing with a female co-worker at a bar, where he subsequently partly removed his shirt to show the co-worker a tattoo on his shoulder. Doc. No. 24 at 3. Hill does not dispute that this particular event took place, but does dispute some of the details. Doc. No. 28 at 3. Plaintiff further contends that Hill later approached her and a female co-worker and made comments that suggested the two women should engage in a sexual relationship. Doc. No. 24 at 3. Hill also supposedly made sexually explicit gestures to Plaintiff when describing potential customers' excitement about the upcoming release of the iPhone in summer 2007. *Id.* at 2-3. Further, Plaintiff asserts that Hill told her she should "bitch-slap" a sales associate for failure to perform a task. *Id.* at 4. And Hill allegedly discussed his experiences at a transvestite bar in front of Plaintiff. Doc. No. 24 at 3; Doc. No. 26 at 17.

Plaintiff also disapproved of Hill's strategies concerning coaching and training of managers and support staff. One such training initiative included the screening of the film "Boiler Room" to staff members. Doc. No. 24 at 3; Doc. No. 26 at 16. Plaintiff asserts that she was the only female present when Hill showed the film and that there was no advance warning

3

about the profane content of the film. Doc. No. 24 at 3. Both parties agree that the film – including portions shown to employees -- contains numerous cases of profanity. *Id.* at 4; Doc. No. 29 at 4. Many of these instances of profanity could be considered misogynistic and/or sexually charged. However, there were no scenes of an explicit, sexual nature shown during the training. Doc. No. 26 at 16. The training exercise had been approved by one of Hill's supervisors. Doc. No. 24 at 3. However, Defendant claims that the supervisor had not closely reviewed the content of the movie. Doc. No. 31 at 4.

Hill was also allegedly unsupportive of Plaintiff's efforts to spend time with her family. When Plaintiff asked to modify her schedule in order to more frequently attend her son's sporting events, Hill purportedly suggested that Plaintiff buy a gas card to give to other mothers to transport her son to and from events. Doc. No. 26 at 19. Plaintiff also alleges that he suggested she would be better off as a stay-at-home mother. Doc. No. 24 at 2.

The record shows that Plaintiff was subject to a number of disciplinary actions by Hill.[1] Plaintiff had also been subject to similar disciplinary actions by her former supervisor, Leinweber. Those included three written disciplinary actions on May 24, 2006, July 12, 2006, and January 4, 2007. Doc. No. 26 at 2. Generally, these actions were related to Plaintiff's management of her employees, but also dealt with sub-par sales numbers. *Id.* Plaintiff has claimed that the low sales numbers were later determined to have been the result of a computing error not attributable to Plaintiff. *Id.* at 2. Even if these numbers were corrected, however, Plaintiff has stated that she is not sure whether she would have met the expected sales numbers. *Id.* at 2. Nevertheless, when Hill started his position as ARSM, he promptly rescinded

---

[1] During Plaintiff's period of employment under Hill's supervision, a number of other store managers also received discipline for reasons similar to those for which Plaintiff was disciplined. Doc. No. 26 at 24.

4

Leinweber's final disciplinary action because Plaintiff's sales results had not been accurate and because he believed that Plaintiff could improve. *Id.* at 4-5.

Hill's interaction with Plaintiff and her retail sales staff increased significantly over what had been experienced under Leinweber. Plaintiff received three discipline letters in 2007. Doc. *Id.* at 6. The first letter was a Performance Improvement Plan ("PIP") received approximately June 8, 2007. *Id.* It indicated that Plaintiff's shortcomings included a "lack of employee engagement with customers," and a lack of "employee 'buy-in' and commitment on initiatives." *Id.* Hill suggested a number of changes for implementation. *Id.*

Plaintiff received a second PIP around August 8, 2007. *Id.* Plaintiff's issues remained largely the same. *Id.* Plaintiff was instructed to provide her sales staff with monthly expectations and continue to promote desired sales behaviors and personal accountability. *Id.* By November 10, 2007, Hill felt that Plaintiff's management had not improved, and so issued a Final Written Warning ("FWW"). *Id.* Major concerns included Plaintiff's failure to provide sufficient feedback and coaching to her staff, and failure to discipline those not maintaining expectations. *Id.* at 6-7.

Following the receipt of the FWW, Plaintiff applied for another position within the company. *Id.* at 7-8. Normally, an employee with a disciplinary record such as Plaintiff's could not have been considered for the position. *Id.* at 7. However, Hill believed that the position would be a better fit for Plaintiff, and was able to convince the company to grant an exception for Plaintiff. *Id.* Plaintiff interviewed for, and ultimately was extended an offer for, the position. *Id.* at 8. She claims that she declined the offer because the position entailed too much traveling, and she was a single mother caring for a young son. Doc. No. 31 at 2.

In early 2008, Plaintiff took an extended medical leave of absence. Doc. No. 26 at 8. She returned in March or April, but did not receive her yearly salary increase. *Id.* Hill informed her that as per written company policy, Plaintiff was no longer eligible for salary increases because she was already above the upper target salary for an employee in her position, and because she had a number of disciplinary actions on her work record. *Id.*

On July 30, 2008, Plaintiff received an informal PIP from Hill. *Id.* at 9. This action was not official discipline, but was meant to act as a reminder of Hill's expectations of Plaintiff in earlier PIPs. *Id.* Plaintiff's FWW, which had been in effect since its issuance, expired in August 2008 without Hill extending it or terminating Plaintiff's employment. *Id.* at 9-10. Hill desired to give Plaintiff more time to improve following her medical leave of absence. *Id.* at 10. However, Plaintiff received another PIP in October 2008. *Id.* at 10. The failure of Plaintiff's staff to meet expectations was again the primary issue. *Id.* Plaintiff was advised to spend more time on the sales floor, communicate expectations, and address poor performance quickly. *Id.* at 10-11. The PIP noted Plaintiff's continued failure to improve the performance of her staff. *Id.* at 11.

Plaintiff states that she began to complain about Hill's management style to Hill's supervisor Shawn McCready and former Human Resources Manager Karen Mendolia. *Id.* at 20. She felt that his supervision was heavy-handed micromanaging and that her disciplines were not warranted. *Id.* at 21. Both Mendolia and Hill later testified that Mendolia had no conversations with Hill concerning Plaintiff's complaints about a hostile work environment. *Id.* at 23. Plaintiff also claims she made reports about Hill through other resources. AT&T had both an Employee Assistance Program ("EAP"), and an Ethics Hotline available. *Id.* The EAP's purpose was to aid AT&T employees experiencing emotional or mental health issues. *Id.* The Ethics Hotline provides employees with an avenue for reporting potentially unethical workplace practices for

6

internal investigation. *Id.* Plaintiff used the Ethics Hotline to report Hill for authorizing an employee to extend credits to a customer. *Id.* at 22. A subsequent investigation revealed no impropriety. *Id.* She also claimed to have called the Ethics Hotline after Hill screened the film "Boiler Room", which included profanities, to employees. *Id.* However, Defendant has no record of this latter report. *Id.*

Plaintiff's employment was terminated on or about December 18, 2008. *Id.* at 11. The termination document cited several reasons: missed deadlines with store displays, the inability to satisfactorily navigate all devices for sale in her store, failure of Plaintiff's staff to consistently push sales of the iPhone, and inability to coach employees and create a sense of accountability. *Id.* at 11-13. Plaintiff's termination was approved by Hill, Director of Sales Shawn McCready, Vice-President/General Manager of Sales Larry D. Evans, Human Resources Manager/Director Allison Menster, and Defendant's legal department. *Id.* at 13.

Plaintiff brought suit in this Court on April 19, 2010 (Doc. No. 1), for a retaliatory termination claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e; a gender discrimination/hostile work environment claim under Title VII; and a claim under the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.*[2] As noted, Plaintiff has made numerous allegations concerning Hill's behavior during the term of Plaintiff's employment, which are pertinent to her hostile work environment and retaliatory termination claims. Plaintiff describes a work environment in which Hill subjected her to vulgar language, sexual innuendo, and unethical behavior. She further alleges Defendant ultimately fired her in retaliation for her complaints regarding Hill's inappropriate behavior. Not surprisingly, Defendant denies virtually

---

[2] Plaintiff has subsequently noted her intention to withdraw her age discrimination claim. Doc. No. 30 at 1 n.1.

7

all of these allegations.³ All of Plaintiff's claims are confined to the time period when Hill served as her supervisor. Doc. No. 26 at 1.

On August 12, 2011, Plaintiff filed her Motion for Partial Summary Judgment (Doc. No. 22) and Brief in Support (Doc. No. 23), asking this Court to find that the element of *respondeat superior* has been established as to her hostile work environment claim. Defendant does not oppose this Motion (Doc. No. 28). Plaintiff has also filed a Concise Statement of Material Facts (Doc. No. 24), to which Defendant has filed a Counter-Statement (Doc. No. 29). Defendant filed its own Motion for Summary Judgment (Doc. No. 25) on August 15, 2011, along with a Brief in Support (Doc. No. 27) and Concise Statement of Material Facts (Doc. No. 26), to which Plaintiff has filed a Counter-Statement (Doc. No. 31). Plaintiff opposes Defendant's Motion (Doc. No. 30). In addition, Defendant filed a Reply Brief in further support of its Motion for Summary Judgment, but as that brief was filed without leave of court, it will not be considered here.⁴

## IV. STANDARD OF REVIEW

"Summary judgment is appropriate only where, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact . . . and the moving party is entitled to judgment as a matter of law." *Melrose, Inc. v. Pittsburgh*, 613 F.3d 380, 387 (3d Cir. 2010) (quoting *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 380 n.6 (3d Cir. 2007)); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56 (a).⁵ Issues of fact are genuine "if the evidence is such that a reasonable jury could return a verdict for the non-

---

³ To the extent that such behavior is corroborated by Defendant, it is noted below.
⁴ As per this Court's June 14, 2011 Final Scheduling Order (Doc. No. 19), "[t]he parties shall file motions for summary judgment, if appropriate, on or before August 15, 2011. The nonmoving party's response to the motion for summary judgment is due on September 14, 2011. *No further briefing is allowed without leave of court.*" (emphasis added).
⁵ Rule 56 was revised in 2010. The standard previously set forth in subsection (c) is now codified as subsection (a). The language of this subsection is unchanged, except for "one word—genuine 'issue' bec[ame] genuine 'dispute.'" Fed. R. Civ. P. 56 advisory committee's note, 2010 amend.

moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); see also *McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). Material facts are those which will affect the outcome of the trial under governing law. *Anderson*, 477 U.S. at 248.

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets this burden, the party opposing summary judgment "may not rest upon the mere allegations or denials of the . . . pleading," but "must set forth specific facts showing that there is a genuine issue for trial." *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (internal citations omitted); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); see also *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (noting that a party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue" (internal quotation marks omitted)).

## V. DISCUSSION

### A. Plaintiff's Motion for Partial Summary Judgment

In her Motion for Partial Summary Judgment, Plaintiff seeks judgment as a matter of law only with respect to whether Defendant meets the requirements for *respondeat superior* liability, which is one of the necessary five elements in establishing a hostile work environment under Title VII. Doc. No. 23. As the Supreme Court has noted, "[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 765 (1998). Based on the facts outlined above, and given that

9

Defendant concedes that *respondeat superior* liability exists, Doc. No. 28, the Court will **GRANT** Plaintiff's Motion for Partial Summary Judgment.

## B. Defendant's Motion for Summary Judgment

In its own Motion for Summary Judgment, Defendant asserts that Plaintiff 1) has failed to adduce sufficient evidence to establish a *prima facie* showing of the elements necessary to a Title VII hostile work environment claim and 2) is unable either to establish a *prima facie* case for her Title VII retaliation claim, or provide evidence to demonstrate that Defendant's stated reasons for her termination were pretextual. Doc. No. 27 at 12, 17. Defendant also argues that Plaintiff cannot support her age discrimination claim, either by establishing a *prima facie* case or by providing evidence to demonstrate that Defendant's stated reasons for her adverse employment action were pretextual. *Id.* at 26. However, as already noted, Plaintiff has indicated her intention to withdraw this latter claim, and provides no arguments to counter Defendant's regarding her age discrimination claim. Doc. No. 30 at 1. Accordingly, the Court will **GRANT** Defendant's Motion for Summary Judgment as to Plaintiff's age discrimination claim. Defendant's arguments as to the hostile work environment and retaliation claims are addressed below.

### 1. Title VII Hostile Work Environment Claim

Defendant first argues that Plaintiff has failed to adduce sufficient evidence to establish a *prima facie* showing of the elements necessary to a Title VII hostile work environment claim. A *prima facie* demonstration of a hostile work environment under 42 U.S.C. § 2000e-2(a)§ 2000e-2(a) requires a plaintiff to show (1) she suffered intentional discrimination because of her sex; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected her; (4) the discrimination would have detrimentally affected a reasonable person in like circumstances; and (5) a basis for employer liability is present. *Jensen v. Potter*, 435 F.3d 444,

449 n.3 (3d Cir. 2006) (overruled on other grounds) (citing *Weston v. Pennsylvania*, 251 F.3d 420, 426 (3d Cir. 2001)). Defendant makes no argument as to the third element, and as we have already granted partial summary judgment in favor of Plaintiff in favor of the fifth element, we need only consider elements one, two, and four.

A review of the record reveals there are clear disputes of material fact as to all three aforementioned elements. Regarding the first element – intentional discrimination because of Plaintiff's sex – Title VII only prohibits discriminatory conduct based upon sex, and not all verbal or physical harassment in the workplace will qualify. *Oncale v. Sundowner Offshore Serv., Inc.*, 523 U.S. 75, 80 (1998). There must be evidence that a "harasser was motivated by general hostility to the presence of women in the workplace." *Id.* at 80. However, the Third Circuit has noted that "[t]he intent to discriminate on the basis of sex in cases involving sexual propositions, innuendo, pornographic materials, or sexual derogatory language is implicit, and thus should be recognized as a matter of course." *Andrews v. City of Philadelphia*, 895 F. 2d 1469, 1482 n. 3. Further, it is "only necessary to show that gender is a substantial factor in the discrimination, and that if the plaintiff 'had been a man she would not have been treated in the same manner.'" *Id.* at 1485 (citing *Tomkins v. Public Serv. Elec. & Gas. Co.*, 568 F. 2d 1044, 1047 n. 4 (3d Cir. 1977)). The existence of conduct of a sexual nature is not required, merely proof of "[i]ntimidation and hostility toward women because they are women." *Id.* (citations omitted). Standing alone, the use of "derogatory and insulting terms relating to women and addressed to female employees personally" may be sufficient. *Id.* (citations omitted).

After drawing all reasonable inferences in favor of Plaintiff, there is sufficient evidence to suggest possible intentional discrimination based on Plaintiff's sex. These included Hill's alleged suggestion that Plaintiff should engage in a sexual relationship with a female co-worker;

11

the supposed use of sexually explicit gestures by Hill when describing customers' reaction to the iPhone; the suggestion that Plaintiff should "bitch-slap" a co-worker; the screening of the film "Boiler Room", which included several instances of profane and misogynistic language; and purported derogatory suggestions by Hill to Plaintiff that she should be a stay at home mother. To be sure, Defendant denies virtually all of these allegations, but this is precisely the type of dispute that renders summary judgment inappropriate on the first element. Nor at this stage do we find Defendant's argument persuasive that Hill was an equal opportunity harasser whose behavior offended employees of both sexes. Doc. No. 27 at 13-14. If true, Plaintiff's allegations concerning Hill's suggestion about a sexual relationship between Plaintiff and her co-worker, as well as his comments about balancing her career and her family, clearly constitute the type of discriminatory behavior that is sufficient to satisfy the first element.

As to the second element of Plaintiff's hostile work environment claim – whether the discrimination was severe or pervasive – the Supreme Court has found this element fulfilled when a "workplace is permeated with discriminatory intimidation, ridicule, and insult." *Oncale*, 523 U.S. at 79 (1998) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). Essentially, discriminating conduct must be so severe or pervasive that it may be said to "alter the conditions of [a plaintiff's] employment and create an abusive working environment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998). Mere utterance of language which engenders offense, or which simply implies discourtesy or rudeness, and simple teasing, is not sufficient. *Id.* at 787. Generally, discriminatory conduct should "be more than episodic; [it] must be sufficiently continuous and concerted in order to be deemed pervasive." *Id.* at 787 n. 1. However, isolated incidents, when extreme, can be enough to change the terms and conditions of employment. *Id.* at 788. See also *Harris*, 510 U.S. at 23 (holding that courts should look at all circumstances

including frequency, severity, physicality, psychological impact, and unreasonable interference with duties).

As already noted, Plaintiff's version of events clearly imply that Hill's regular workplace behavior was laced with profanity and improper conduct. Once again, Defendant categorically denies Plaintiff's allegations in nearly all respects, and further attempts to classify Hill's behavior as mere vulgar language. Doc. No. 27 at 15-16. But when we draw all reasonable inferences in favor of Plaintiff, Defendant's denials – whether they are truthful or not – are insufficient for us to find in in favor of Defendant on the second element. And given Hill's own admissions that some of the aforementioned behavior would be considered offensive by a reasonable person (despite his denials that he had engaged in the relevant behavior), Doc. No. 29 at 3-4, we similarly have little problem finding in Plaintiff's favor, for purpose of this Motion, for the fourth element of whether such behavior would have detrimentally affected a reasonable person in like circumstances. Accordingly, Defendant's Motion for Summary Judgment fails as to Plaintiff's hostile work environment claim.

### 2. Title VII Retaliatory Termination Claim

Defendant next argues that Plaintiff is unable to establish a *prima facie* case for her Title VII retaliation claim. Further, Defendant states that it had a legitimate, nondiscriminatory reason for Plaintiff's termination – namely, her failure to properly train and motivate her sales representatives to adopt and adhere to Defendant's desired sales behaviors. Doc. No. 27 at 22. Given this proffered reason, Defendant asserts that Plaintiff has not met her burden of providing evidence that Defendant's stated reasons for her termination were pretextual. We address each of these arguments in turn.

### a. Retaliatory Termination – *prima facie* case

To establish a *prima facie* case for retaliation under Title VII, Plaintiff must show "(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." *Moore v. City of Philadelphia*, 461 F. 3d 331, 340 – 41 (3d Cir. 2006) (quoting *Nelson v. Upsala Coll.*, 51 F. 3d 383, 386 (3d Cir. 1995)). Here, there is no question that Plaintiff has clearly met the second requirement, as she was terminated by Defendant.

With respect to the first element, there is no required format for a "report" of unlawful conduct under Title VII. Opposition to unlawful conduct under Title VII can include informal complaints to management. *Moore*, 461 F.3d. at 343. Evidence of unlawful conduct may be direct or indirect, and as soon as a potential witness could reasonably believe that such conduct has occurred, Plaintiff is under the protection of § 2000e-3(a). *Id.* at 345. Workplace conduct should be judged "by 'looking at all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Clark County School District v. Breeden*, 532 U.S. 268, 270-1 (2001) (quoting *Faragher*, 524 U.S. at 786).

Defendant contends that Hill's conduct did not qualify as unlawful activity and that Plaintiff has provided little documentary evidence to suggest that she made a report of such activity. Doc. No. 27 at 19-20. The Court acknowledges that the record of such evidence is relatively scant, but Plaintiff has nevertheless provided some evidence – namely, her assertions that she reported the incident involving Hill's screening of "Boiler Room" to the employee

14

hotline. The screening of the film took place while Plaintiff was the only woman in the room and was exemplary of the larger pattern of Hill's alleged behavior, and thus potentially falls within the ambit of Title VII's protections. The fact that Defendant claims to have no record of such a report is a dispute of material fact not fit for resolution at this stage. Accordingly, Plaintiff has fulfilled the first element for purpose of this Motion.

With regard to the third element, a plaintiff must show a causal connection between 1) the plaintiff's opposition to, or participation in proceedings against, unlawful discrimination and 2) an action that might have dissuaded a reasonable worker from making or supporting a charge of discrimination. *Moore*, 461 F.3d at 341-2. Plaintiffs may utilize a "broad array" of evidence "from which causation can be inferred." *Farrell v. Planters Lifesavers Co.*, 206 F. 3d 271, 281 (3d Cir. 2000). Further, "it is causation, not temporal proximity or evidence of antagonism, that is an element of plaintiff's *prima facie* case, and temporal proximity or antagonism merely provides an evidentiary basis from which an inference can be drawn." *Id.*. (quoting *Kachmar v. Sungard Data Systems, Inc.*, 109 F. 3d 173, 177 (3d Cir. 1997)).

Defendant argues that Plaintiff cannot satisfy this element because the record shows that neither Hill nor other relevant decision makers were aware that Plaintiff made any complaints about Hill. Doc. No. 27 at 20-21. Once again, the record is relatively scant as to a connection between Plaintiff's protected activity and her termination. However, in this case, an evidentiary basis may be inferred from Plaintiff's allegations that Hill indicated that "I guess I'll be hearing from [human resources] again" after Plaintiff evinced disgust regarding Hill's comments about a transvestite bar. Doc. No. 30 at 13. The purported comments strongly suggest that Hill knew about previous reports made by Plaintiff. Accordingly, Defendant's argument as to the third element fails, and Plaintiff's *prima facie* case is sufficient to survive summary judgment.

15

### b. Defendant's reason for Plaintiff's termination

Once the Plaintiff has established a *prima facie* case, the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employee's termination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). This burden of production is satisfied if the employer introduces "evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). Here, Defendant has provided such a reason – namely, Plaintiff's repeated failure to properly train and motivate her sales representatives to adopt and adhere to Defendant's desired sales behaviors, as supported by a long line of disciplinary actions indicating that Plaintiff's performance was below expectations. Doc. No. 27 at 22-23. If taken as true, Defendant's evidence would permit the conclusion that there was a nondiscriminatory reason for Plaintiff's termination. Accordingly, Defendant has met its burden under the *McDonnell Douglas* test for Plaintiff's Title VII claims.

### c. Plaintiff's evidence of pretext

However, this does not end the inquiry. Once the employer provides a legitimate, nondiscriminatory reason for the employee's termination, the employee can argue that the proffered reason was not the actual one, by presenting evidence that either 1) "casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication" or 2) "allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Atkinson v. LaFayette College*, 460 F.3d 447, 454 (3d Cir. 2006) (quoting *Fuentes* 32 F.3d at 762). In other words, a reasonable factfinder must be able to find that the Defendant's proffered reasons lack credence; the Plaintiff must show not merely that the

employer's proffered reason was wrong, but that it was "so plainly wrong that it cannot have been the employer's real reason." *Atkinson*, 460 F.3d at 454 (quoting *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108-09 (3d Cir.1997)).

While Plaintiff raises questions about discipline citations received prior to Hill's employment as her supervisor, Doc. No. 30 at 13, she does not dispute that she received citations under Hill for her failure to manage her own sales representatives. Instead of demonstrating that Defendant's proffered reason for terminating her was "so plainly wrong that it cannot have been the employer's real reason", she only re-states her alternative theory – namely, that Defendant terminated her for reporting Hill's behavior – without providing any additional evidence. *Id.* at 13-14. While such a theory is plausible, it falls far short of Plaintiff's burden to produce specific evidence to counter Defendant's proffered reason under *McDonnell Douglas*. Accordingly, the Court will **GRANT** Defendant's Motion for Summary Judgment as to Plaintiff's retaliatory termination claim.

## VI. CONCLUSION

For the reasons outlined above, Plaintiff's Motion for Partial Summary Judgment (Doc. No. 22) is **GRANTED**. Defendant's Motion for Summary Judgment (Doc. No. 25) is **GRANTED IN PART** and **DENIED IN PART**. This case will presumptively be called for trial on May 7, 2012. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GLORIA PATTIE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NO. 3:10-CV-104 |
| v. ) | JUDGE KIM R. GIBSON. |
| ) | |
| AT&T, ) | |
| ) | |
| Defendant. ) | |

## ORDER

**AND NOW**, this 28th day of March 2012, upon consideration of Plaintiff's Motion for Partial Summary Judgment and Brief in Support (Doc. Nos. 22 and 23), Plaintiff's Concise Statement of Material Facts (Doc. No. 24) and Counter-Statement of Facts (Doc. No. 31), Defendant's Response to Motion for Partial Summary Judgment (Doc. No. 28), Defendant's Motion for Summary Judgment (Doc. No. 25) and Brief in Support (Doc. No. 27), Defendant's Concise Statement of Material Facts (Doc. No. 26) and Counter-Statement of Facts (Doc. No. 29), and Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment (Doc. No. 30), in accordance with the Memorandum **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Partial Summary Judgment (Doc. No. 22) is **GRANTED**. Accordingly, at trial Plaintiff need not prove the element of *respondeat superior* as to her Title VII hostile work environment claim.

2. Defendant's Motion for Summary Judgment (Doc. No. 25) is **GRANTED IN PART** and **DENIED IN PART**. The Clerk is directed to enter **JUDGMENT** in favor of Defendant on Counts I (retaliatory termination) and III (age discrimination) of Plaintiff's Complaint. Defendant's Motion is **DENIED** as to Count II (gender

18

discrimination/hostile work environment).

**BY THE COURT:**

_____
**KIM R. GIBSON,
UNITED STATES DISTRICT JUDGE**